IN THE

# SUPREME COURT

OF THE

# TERRITORY OF WYOMING.

---

# JANUARY TERM, 1886.

---

## SWAN v. UNITED STATES.

(January 23, 1886.)

CONSTITUTIONAL LAW — TERRITORIAL ACT — CONFLICT WITH UNITED STATES STATUTE — BAIL BOND — VALIDITY.

1. Rev. St. U. S. § 1014, provides for the release on bail of one who has committed a crime against the United States. Act Dec. 13, 1879, provides for the giving of a bail bond by one accused of crime. *Held* that, though the United States statute had reference to the giving of a recognizance, rather than a bond, as a means of securing the offender, yet the territorial act providing for a bail bond in no way conflicted therewith, and that a bond given by an offender against the laws of the United States was valid and could be enforced.

2. A statute will not be declared unconstitutional unless it clearly appears that it cannot be supported by any reasonable intendment or presumption.

Error to district court, Laramie county.

Action by the United States against Alexander H. Swan for the penalty of a bail bond given by one George R. Thomas as principal and said Swan as surety. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. W. Corlett,* for plaintiff in error. *A. C. Campbell,* for the United States.

PARKS, J. The statement of the case by plaintiff in error is correct, and is as follows: This was an action brought in said district court by said defendant in error against said plaintiff in error, to recover the sum of $500, being the penal amount of a certain bond given by one George R. Thomas, as principal, and said Alexander H. Swan, as surety, to the said United States. Said bond was taken by said district court while exercising the same jurisdiction as is vested in circuit and district courts of the United States, and was taken to secure the appearance of the said Thomas before said district court for trial upon an indictment for forgery found therein. The said crime of forgery was committed against the laws of the United States. The said Thomas did not present himself according to the condition of said bond, and thereupon said district court ordered the default of said Thomas and said Swan to be entered upon its records, and that said bond be declared forfeited to said defendant in error, which was done.

To the cause of action as thus set forth the defendant in the court below, said Alexander H. Swan, filed a general demur-

rer, alleging that said amended petition did not state facts sufficient to constitute a cause of action in favor of the United States of America and against said Alexander H. Swan.

On January 5, 1885, the said district court overruled said demurrer, to which order and ruling exception was duly taken by the counsel for plaintiff in error. On January 17, 1885, said district court rendered a final judgment in said action against said plaintiff in error for the sum of $500, from which judgment a writ of error has been prosecuted to this court. Upon the overruling of the demurrer the plaintiff in error elected not to answer in the case, but stood upon his demurrer. The final judgment in the case was therefore rendered upon default.

The issue presented to this court is wholly one of law, and is embraced in the single question as to whether the trial court erred in overruling the demurrer of the plaintiff in error to the amended petition of the defendant in error, and thereafter in rendering a final judgment against the plaintiff in error. This is the only assignment of error presented to this court in this case. The precise question to be presented is whether or not, a bond instead of a recognizance having been taken to secure the appearance of the said Thomas at a succeeding term of said court upon an indictment for an offense against the United States, an action can be maintained upon such bond in favor of the United States.

On the part of plaintiff in error it is claimed that no warrant or authority existed for taking such bond, and hence that it was void; that notwithstanding the bond the defendant could have been arrested at any time, and as there was no consideration to support the bond it is not such an instrument as will support an action. The bond thus claimed to be void by plaintiff in error was taken under the territorial act of December 13, 1879, entitled "An act to provide for the manner of taking bail in criminal cases."

In his argument plaintiff in error says: "It is not meant to be asserted that the territory may not legislate as to many matters affecting the proceedings in United States cases. It may undoubtedly do so as to any matter affecting the procedure in United States cases where such legislation is not inconsistent with provisions of the federal law regulating and controlling the same subject; but where

congress has provided for any of these matters, then the territory, notwithstanding its ample legislative power, is prohibited from legislating upon the same subject in a manner in any degree in conflict with the federal legislation."

It is assumed by plaintiff in error that the matter of taking bail in United States criminal cases in the territories is provided for in the judiciary act of 1789 by recognizance, and that the legislation of this territory does not and cannot provide for doing the same thing by bail bond. But the legislation of congress upon this subject, in terms, applies only to the states. The territories are not mentioned or referred to. There were not in 1789, and never had been, any territories or territorial courts, as now organized. The ordinance of 1787 for the government of the Northwest territory, ordained by the continental congress more than a year before the adoption of the federal constitution, and more than two years before the judiciary act became a law, was very different from the modern organic acts of the territories, and contained a provision which they do not, covering the matter and manner of taking bail. It seems to us a very broad and liberal construction of section 1014 of the act of 1789 to say that the powers conferred by that section upon the courts, judges, and other officers therein named were intended to be exercised by a different class of courts and judges not in existence, and not provided for or contemplated or referred to in that law.

But let it be admitted that the judiciary act of 1789 is "not locally inapplicable," and may be resorted to by the territorial courts and judges for authority to act *ex necessitate rei* in cases where there is no other law upon the subject; and that section 1014 of that act will justify a territorial court or judge in taking bail in United States criminal cases; and that the method provided in the act is by recognizance; it does not follow from all this that the mode provided by congress is exclusive of any other mode provided subsequently by the territorial legislature, unless, to use the language of the organic act, the two methods are "inconsistent." Inconsistency implies opposition, antagonism, repugnance. One definition given by the lexicons of "inconsistency" is "repugnance" and one definition given of "repugnance" is "inconsistency." These words, though not exactly synonymous, may be, and often are, used interchange-

Swan v. United States.

ably. A law providing for a bail bond in criminal cases is different from a law providing for a recognizance in such cases; but it is neither repugnant to nor inconsistent with it. It is merely cumulative; both methods may obtain in the same jurisdiction, and both do co-exist in several of the states. In some of the states the courts speak of "bonds of recognizance" and "recognizance bonds." These expressions imply harmony and union between the two modes of taking bail, and not inconsistency or repugnance.

If there were reasonable doubt upon the question of "inconsistency" raised by plaintiff in error, we should still sustain the law in question. The authorities are abundant that the courts should not set aside an act of the legislature merely because there may be doubts of its validity or constitutionality. Chief Justice SHAW informs us that courts will "never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained." The court of appeals of New York declare that "before proceeding to annul by judicial sentence what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption." People v. Supervisors, 17 N. Y. 235. The supreme court of Illinois hold that "whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts." Newland v. Marsh, 19 Ill. 376. The supreme court of the United States affirm that every statute is presumed to be constitutional. The courts ought not to declare one to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the legislature should be sustained. Munn v. Illinois, 94 U. S. 113. The organic act being the constitution of the territory, the foregoing authorities, and many others to the same effect, are clearly applicable to the present case.

If section 1014 may be held to apply to the territories as well as to the states, "the usual mode of process against offenders" in the matter of bail authorized by that section is legal and valid in a territory. Since 1879 the usual mode of process in this territory to hold offenders for trial has been by bail bond, though this mode has not excluded the method by recognizance under the Compiled Laws, which is also practiced. The act of the territorial legislature of 1879 "To provide for the manner of taking bail in criminal cases" is general in its terms, and applies "when any person is indicted in any of the courts of this territory," whether the offense was against the United States or the territory.

We are of opinion that the bond sued on in this case, having been made and executed in conformity to that act, is valid, and that the judgment of the district court should be affirmed.

Judgment affirmed.

BLAIR, J., (concurring.) The bail bond in this case having been taken to secure the appearance of one Thomas, a party charged with a criminal offense against the laws of the United States, the question raised by the demurrer is, was the taking of such bond authorized by the laws of the United States, and if not, is it valid if taken in conformity to the laws of this territory? It is admitted that if there be authority to take the bond in question under any law of congress it is by virtue of section 1014 of the Revised Statutes. That section, so far as it is pertinent to the question involved, reads as follows:

"For any crime or offense against the United States the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court authorized to take bail, or by any chancellor, judge of a superior or supreme court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizance of the witnesses for their appearance to testify in the case."

The first question which would seem to suggest itself on reading this section is, does it apply or have any reference to the taking of bail in criminal cases for the violation of the laws of the United States in the territories? My doubts are

Swan v. United States.

so strong that they amount to a conviction that it does not. I am clearly of opinion that the courts and judges of the United States referred to in this section are courts and judges in the sense of the constitution, and which were created and authorized by that instrument, and consequently the section has reference to such courts only which exist in a state. It has been decided that the supreme and district courts in a territory are legislative courts, therefore unknown to the constitution, created wholly by authority of congress, under that clause of the constitution which confers upon congress the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. Clinton v. Englebrecht, 13 Wall. 434. Again, at the time congress passed the act in question, (1789,) there were no such territorial organizations as exist at the present day. It is true that two years previous, in 1787, congress passed the ordinance for the government of the territory of the United States northwest of the River Ohio; but its provisions were essentially different from those found in the organic acts of the various territories which have been organized since that time. I need call attention to but one. By that ordinance the governor and judges of the territory were empowered and authorized to adopt and publish in each of the districts of said territory such laws of the original states, civil and criminal, as might be necessary and best suited to the circumstances of the district. It would seem, therefore, to be manifest that when congress passed the act of which section 1014 forms a part it never intended it to have, nor has it, any force or effect in a territory,—that its application is confined exclusively to a state.

But, for the sake of argument, I will concede that section 1014 applies with equal force and effect in a territory as it does in a state. How does the matter then stand? let me ask. The section says that the offender may be bailed. How bailed? In what manner? For it will be observed that the mode or method of bailing is not prescribed or defined by the statute. There are two methods of taking bail,— by recognizance and by bond. In some respects a recognizance is very similar to a bond. It is defined to be an obligation of record, which a man enters into before some court of record or magistrate duly authorized, binding himself under a penalty to do some particular act. A bond,

or, as it is commonly called, a bail bond, is also an obligation, but under seal, signed by the party giving the same, with one or more sureties, under a penalty, conditioned to do some particular act. It will be observed that the chief distinction between the two methods of bailing is that the former is an acknowledgment upon record of a debt already due, while the latter is the creation of a new debt not of record. The contention of the learned counsel for the plaintiff in error is that congress, in not prescribing the method of taking bail in section 1014, left it wholly to the rule at common law as to that matter, and which he maintains was by recognizance only, and for this reason the bail bond in question was unauthorized, and therefore illegal and void. I submit, is it not just as reasonable to suppose that congress purposely omitted to prescribe a method of taking bail in order that either of the modes I have referred to might be adopted by legislative authority as convenience and circumstances required? I think so. Assuming, as I have done, that the position taken by the counsel for the plaintiff in error is correct, viz., that section 1014 is alike applicable to a territory as a state, still, inasmuch as the words of the section do not exclude and prohibit the taking of a bond, I am unable to see any valid reason why the bond executed by Thomas and his sureties is not just as legal and valid as a recognizance would have been had one been taken instead of a bond. Totter & W. St. 154.

I will now return to and consider the last branch of the inquiry suggested at the beginning of this opinion, viz., is the bond in question valid if taken in conformity to the laws of this territory? The proposition will hardly be questioned that where congress fails to provide how or in what manner a thing required shall be done to give effect to a law of congress in a territory, resort may be had to the law of the territory to supply the omission. Congress having failed to prescribe in section 1014 of the Revised Statutes the method of taking bail in criminal cases, and inasmuch as the laws of this territory authorize the taking of a bond in such cases, and it appearing that the bond upon which this action was brought in the court below is in all respects conformable to the requirements of said laws, I am of opinion that it is legal and valid, and that the judgment of the court below should be affirmed.

LACEY, C. J. I concur in the result reached by Judges BLAIR and PARKS, on the ground that no statute of the United States seems to me to establish any exclusive method of taking bail in cases of criminal violations of the laws of the United States; hence it seems to me that the territorial legislature, in the exercise of its large legislative powers, might well provide for the taking of a bail bond in such cases.